# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

In the Matter of: }
SIDNEY KEITH WHITE } CASE NO. 09-83098-JAC-13
SSN: XXX-XX-1801 }
LESA CHANDLER WHITE }
SSN: XXX-XX-8339, } CHAPTER 13
                Debtor(s). }

## MEMORANDUM OPINION

This case comes before the Court on trustee's objection to debtor's amended claim of exemptions claiming as exempt $50,000 in life insurance proceeds received postpetition following the untimely death of his wife. The trustee also seeks to modify the debtor's confirmed Chapter 13 plan to increase the base gross due under the plan by the sum of $25,000. Upon due consideration of the pleadings and respective submissions of the parties, as set forth in more detail below, the Court finds that the trustee's objection to the amended claim of exemptions is due to be sustained, and trustee's motion to modify granted pursuant to 11 U.S.C. § 1329(a)(1).

## FACTS

The facts of the present proceeding are essentially undisputed. On July 31, 2009, Sidney and Lesa White filed a joint Chapter 13 bankruptcy petition. Debtors did not list their contingent interest in the life insurance policy insuring Lesa White's life as an asset in their bankruptcy schedules even though the debtor was struggling with cancer when she filed for bankruptcy relief. On Schedule I - Current Income of Individual Debtor(s), Sidney White listed net income of $2,257.54, and Lesa White scheduled disability income of $1,985.00. After expenses listed on Schedule J - Current Expenditures of Individual Debtor(s), debtors listed monthly net income of $816.84. On December

8, 2009, the Court entered an amended confirmation order requiring the debtors to pay their disposable income of $819 per month for a period of 60 months.

Pursuant to the confirmation order, the debtors were to pay their mortgage payment of $537.02 direct to Citizens Bank & Trust. Debtors valued their residence, consisting of a mobile home and land, at $51,800 on which they owed $55,587.39. Citizens Bank & Trust filed a claim for $53,837.56 for money loaned secured by real estate located in Madison County, Alabama and a 2008 double-wide mobile home.

Prior to filing a petition for bankruptcy relief, the debtors purchased a $50,000 life insurance policy on the life of Lesa White through the husband's employer. Lesa White was the insured/policy owner and her husband was designated as the beneficiary.

On April 20, 2010, Lesa White died, leaving Sidney White as the surviving spouse and debtor in their bankruptcy case. Sometime thereafter, while the debtor's bankruptcy petition was pending, Mr. White received $50,000 from the insurance policy owned by his wife. Without seeking Court permission, the debtor used the life insurance funds to pay in full the mortgage debt to Citizens Bank & Trust. Although Bankruptcy Rule 1007(h) requires a debtor to supplement his schedules regarding an interest in property acquired after the petition date "within 14 days after the information comes to the debtor's knowledge," the debtor did not file amended schedules disclosing the inheritance until February 25, 2014. On that date, debtor filed an amendment to his schedules listing the life insurance proceeds on Schedule B as an asset held by debtor, and claiming the life insurance proceeds as exempt on Schedule C pursuant to ALA. CODE § 6-10-8(a), (b) and § 27-14-29(a), (b).

2

On March 3, 2014, the trustee timely filed an objection to debtor's amended claim of exemptions, and a motion to modify confirmed plan which has four months remaining. The trustee seeks to increase the base gross by $25,000 based on the savings to the debtor from being relieved of monthly mortgage payments the past 48 months.

**CONCLUSIONS OF LAW**

Section 541(a)(1) of the Bankruptcy Code defines property of the bankruptcy estate as "all legal or equitable interest of the debtor in property as of the commencement of the case." Section 541(a)(5) further defines property of the bankruptcy estate to include inheritances and life insurance proceeds which the debtor becomes entitled to acquire within 180 days after the commencement of the case. Section 1306(a)(1) of the Bankruptcy Code further expands the definition of property of the Chapter 13 bankruptcy estate to include, in addition to the property defined in § 541, such property the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted.[1]

"[T]o provide the debtor with 'the basic necessities of life' and ensure that 'the debtor will not be left destitute,'" the Bankruptcy Code allows a debtor to exempt certain property from the bankruptcy estate.[2] 11 U.S.C. § 522(b)(1). Individual states may opt out of the exemptions provided for by the Bankruptcy Code and provide their own list of exemptions which the state of Alabama

---

[1] *In re Tinney*, 2012 WL 2742457 (Bankr. N.D. Ala. 2012)(finding inheritance acquired more than 180 days postpetition was properly included as property of the Chapter 13 estate).

[2] *In re Rudd*, 483 B.R. 345 (Bankr. M.D. Ala. 2012)(quoting *In re Bland*, 793 F.2d 1172, 1173 (11th Cir. 1986)).

3

has done. 11 U.S.C. § 522(b)(2). The debtor argues that the life insurance proceeds are an exempt asset under ALA. CODE § 27-14-29(b) which reads as follows:

> (b) If a policy of insurance . . . . *is effected by any person on the life of another in favor of the person effecting the same* . . . . the latter shall be entitled to the proceeds and avails of the policy as *against the creditors*, personal representatives, trustees in bankruptcy and receivers in state and federal courts *of the person insured*. If *the person effecting such insurance* . . . . is the wife of the insured, she shall also be entitled to the proceeds and avails of the policy as *against her own creditors*, personal representatives, trustees in bankruptcy, and receivers in state and federal courts.

(emphasis added).

Under § 27-14-29(b), a beneficiary may exempt life insurance proceeds as to the creditors of not only the insured, but also against creditors of the beneficiary spouse. "This is referred to as the 'ultimate exemption.'"[3] The broad exemption provided by § 27-14-29(b) only applies if the beneficiary-spouse was the person who "effected" the insurance policy.[4]

The debtor contends that he *effected* the life insurance policy on the life of his wife within the meaning of § 27-14-29(b). The debtor argues pursuant to § 27-14-29(b) that the proceeds of the $50,000 life insurance policy are exempt from both his wife's creditors as the insured, and his creditors as the beneficiary of a policy debtor effected on his wife's life. Debtor asserts that in 1990 he filled out the life insurance policy at his place of employment, answered the questions himself, chose the policy amount to avoid a medical exam, and then asked his wife to come by and sign the application, which she did. Thereafter, debtor asserts that he paid the premiums by payroll deduction for as long as he was with his employer. Debtor admits, however, that he is not listed as the owner of the policy. His wife signed the application in her own name. She was listed as both

---

[3] *In re Rudd*, 483 B.R. at 358.

[4] *Id.*

4

Case 09-83098-CRJ13   Doc 76   Filed 05/16/14   Entered 05/16/14 12:35:20   Desc Main
Document      Page 4 of 11

the insured and owner of the insurance policy. Debtor was the mere beneficiary of same. Nevertheless, debtor contends that he was the procuring cause of the policy for purposes of § 27-14-29(b).

The trustee objects to the debtor's claim of exemption contending that the life insurance proceeds are an asset of the estate. The party objecting to an exemption bears the burden of establishing the objection by a preponderance of the evidence.[5] The trustee argues debtor's statements that he requested the policy application, filled it out, and paid the premiums do not prove debtor effected the policy. Rather, trustee asserts that the policy was "effected" for purposes of § 27-14-29(b) in the sense of having been brought about by the execution of the policy application by the wife. Although the debtor set the stage for the wife to apply for the policy, the wife executed the application and is listed as the owner of the policy.

Neither party cites any decision of the Alabama state courts precisely defining the term "effected" for purposes of § 27-14-29(b), and the Court has found none. In *In re Boykin*, 465 B.R. 665, 669 (Bankr. S.D. Ala. 2012), an Alabama bankruptcy court turned to cases interpreting a New York statute with similar wording to define the term "effecting." In *Matter of Levine*, 38 N.Y.S.2d 442, 444 (N.Y.S. 1942), the state court held that the word 'effect' must be given its natural meaning as "the one who is the 'procuring cause' of the insurance." *Levine* held that the surviving spouse was not the procuring cause of the insurance where the decedent was the owner of the policy and the decedent paid the premiums. Unlike the wife in *Levine,* the surviving spouse in *Boykin* was listed as the owner of the insurance policy from its inception. In *Boykin*, the surviving spouse signed the application, was listed as the owner, and paid the premiums on the policy. *Boykin* explained that

---

[5] *Silliman v. Cassell (In re Cassell)*, 688 F.3d 1291 (11th Cir. 2012).

5

"[t]he written document naming the debtor as owner and applicant is the best evidence of who effected the insurance policy."[6]

In the case before the Court, the surviving spouse is not listed as the applicant, nor the owner of the insurance policy. This case is most similar to the New York case of *Matter of Bifulci*, 154 F. Supp. 629 (S.D.N.Y. 1957) in which the deceased spouse made application for the insurance policy on his life while the surviving spouse paid the insurance premiums. The *Bilfulci* court explained that while the payment of premiums may be considered some evidence as to who 'effected' the policy, the payment of premiums is not conclusive. The word 'effect' is defined in the dictionary as meaning 'to accomplish' and must be carefully distinguished from the word 'affect.' To 'affect' means 'to influence.'[7] In *Bilfulci*, the court determined that while the surviving spouse may have indeed influenced her husband to take out the insurance and may have assisted in the payment by causing the premiums to be paid, it was the husband, as the owner of the policy, who actually made application for the insurance and secured the insurance policy. "While the wife may have 'affected' the issuance of the insurance policy, it was the husband who 'effected' the issuance of the policy."[8] In order for the proceeds to be exempt from claims of creditors of the surviving spouse, the surviving spouse on his own initiative must take out insurance on the decedent, "making the application for the policy and receiving the policy."[9] Because the decedent husband effected the issuance of the policy on his own life, the death benefits received by the bankrupt wife were not exempt from her creditors. This is precisely what transpired in the case before the Court. Although

---

[6] *In re Boykin*, 465 B.R. 665, 669 (Bankr. S.D. Ala. 2012).

[7] *Matter of Bilfulci*, 154 F. Supp. 629, 631 (S.D.N.Y. 1957).

[8] *Id.*

[9] *Id.*

Case 09-83098-CRJ13    Doc 76    Filed 05/16/14    Entered 05/16/14 12:35:20    Desc Main
Document      Page 6 of 11

the debtor influenced his wife to take out the insurance policy and assisted in the payment thereof by paying the premiums for the insurance policy, it was the insured who effected the issuance of the policy by making application for same in her own name and being listed as the owner of same.

Another case addressing the New York statute similar to that before the Court is the case of *In re Rundlett*, 142 B.R. 649 (Bankr. S.D.N.Y. 1992) in which the bankruptcy court explained that the critical feature for purposes of the exemption is whether the beneficiary has title to the insurance policy. In *Rundlett*, the debtor's late husband purchased four insurance policies insuring his life. Thereafter, the husband assigned two of the four policies to his wife. For purposes of the exemption statute, the court held that the beneficiary wife "effected" the two policies which were purchased by her late husband, but assigned to the wife. However, the policies in the husband's name which were never assigned to the wife were not "effected" by the wife so as to be exempt from her creditors. The important distinction was that the wife became the title owner of two of the policies after her husband assigned same to her. The husband's affirmative act "effecting" or causing the insurance policies to be taken out was attributable to the wife upon assignment. The husband was deemed her agent for purposes of acquiring title to the policies. But as to the two policies in the husband's name which were never assigned to the debtor, the debtor never became the title owner and the life insurance funds were not exempt from her creditors, "even if the policy was taken out at the instigation of the wife."[10]

In accord with the cases cited above, the Court finds that the debtor is a mere beneficiary for purposes of § 27-14-29(b). Even though his wife may have effected the policy at debtor's instigation, the debtor never became the title owner of the life insurance policy. For § 27-14-29(b)

---

[10] *In re Rundlett*, 142 B.R. 649, 645 (Bankr. S.D.N.Y. 1992).

Case 09-83098-CRJ13    Doc 76    Filed 05/16/14    Entered 05/16/14 12:35:20    Desc Main
Document      Page 7 of 11

to apply, the owner and the beneficiary must be the same person, and the owner must have taken out the policy on the life of their spouse.[11]

The fact that the debtor "paid" the premiums is also not determinative. There is no evidence before the Court that the debtor and his wife maintained separate checking accounts from which the premiums were paid. Although the debtor asserts that the premiums were initially paid by payroll deduction, there is no evidence to suggest that the debtor and his wife maintained separate checking accounts. If they maintained a joint checking account, any funds deducted from the debtor's paycheck reduced not only the debtor's resources but also his wife's resources. Debtor stated in his memorandum in support of debtor's claim of exemption that his wife was never involved in any of the finances in the family, thus is it unlikely that the parties maintained separate checking accounts. Regardless, debtor admits that his wife executed the application and that his wife was the title owner of the insurance policy. As a mere beneficiary, the debtor is not entitled to exempt the insurance funds from his creditors. Accordingly, the Court finds that the ultimate exemption under § 27-14-29(b) is inapplicable, and the insurance funds received by the debtor during the pendency of this bankruptcy proceeding are not exempt against his creditors.

The trustee concedes that the life insurance proceeds are exempt against creditors of the insured, but argues that because this case was filed as a joint case and has been jointly administered that there is no basis for segregating the husband's debts from those of his wife at this time. Instead, the trustee contends that the entire pool of unsecured creditors in this case is entitled to benefit from the life insurance funds in the hands of the debtor. However, the filing of a joint case by two spouses does not render the exemption to which the debtor is entitled under the Alabama Code

---

[11] *In re Rudd*, 483 B.R. 354, 360 (Bankr. M.D. Ala. 2012).

Case 09-83098-CRJ13    Doc 76    Filed 05/16/14    Entered 05/16/14 12:35:20    Desc Main
Document      Page 8 of 11

inapplicable.[12] In *Rudd*, 483 B.R. 354, 358 (Bankr. M.D. Ala. 2012), the bankruptcy court explained that the "mere filing of a joint case does not have such a drastic effect, such that a debtor would lose statutorily provided for exemptions simply by way of choosing to file jointly with one's spouse." The effect of filing a joint case is to create two separate bankruptcy estates which are separate and distinct.[13] Each debtor's estate in a joint proceeding operates on its own, and is entitled to the exemptions as it would have been if it were filed as a separate case. Indeed, the Supreme Court recently explained that federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Bankruptcy Code.[14] Thus, the life insurance funds are exempt against the creditors of the insured/policy owner under §§ 27-14-29(a) and 6-10-8.

A review of the schedules filed in this case reveals debtors listed certain debts as being jointly owed, while listing others as owed separately by the wife or husband. The life insurance funds shall be exempt against only those claims owed by the wife individually. The debtor is judicially estopped from asserting that additional debts not previously scheduled in his wife's name are in fact debts of his wife. Accordingly, the debtor's Chapter 13 plan is due to be modified pursuant to § 1329(a)(1) based upon the debtor's changed circumstances to the extent necessary as calculated by the trustee to satisfy claims filed by creditors of the debtor.

While this result may seem harsh to the debtor who only has a few months remaining to satisfy his Chapter 13 payments, the Eleventh Circuit has recognized that "the bankruptcy court may deny a debtor the right to amend his schedules, including the schedule of exempt assets . . . .

---

[12] *In re Rudd*, 483 B.R. 354, 358 (Bankr. M.D. Ala. 2012).

[13] *Id.*

[14] *Law v. Siegel,* 134 S. Ct. 1188 (2014)(bankruptcy court exceeded its statutory authority and inherent sanction powers by surcharging debtor's exemption).

9

on a showing of a debtor's bad faith or of prejudice to creditors."[15] In *Henkel v. Green (In re Green)*, 268 B.R. 628 (Bankr. M.D. Fla. 2001), the bankruptcy court found debtors who waited eighteen months to amend their schedules to disclose life insurance policies and IRAs claimed their exemptions in bad faith. The debtors waited too long to amend their schedules and claim the belatedly scheduled assets exempt. Likewise, this Court is troubled this debtor inherited $50,000 in April of 2010 and failed to amend his schedules until February of 25, 2014 to disclose same without any explanation for the delay. The operation of the bankruptcy system depends on honest and forthright reporting. However, since the trustee has not objected to the amended exemption based on bad faith, the Court will not deny the exemption in its entirety.

Based on the foregoing, the Court sustains the trustee's objection to debtor's amended claim of exemptions. The debtor is permitted only those exemptions allowed by law pursuant to ALA. CODE § 6-8-10 and § 27-14-29(a) in accord with which the debtor shall be permitted an exemption for the proceeds of the life insurance policy as to the creditors of the insured/owner, Lesa White. An exemption for such policy proceeds shall be denied as against the creditors of the debtor, Sidney White. The trustee is authorized to collect the proceeds for the benefit of the beneficiary husband's creditors. Pursuant to § 1329(a)(1), the debtor's Chapter 13 plan is modified accordingly.

Done and Ordered this day May 16, 2014

                                          /s/ Jack Caddell
                                          Jack Caddell
                                          U.S. Bankruptcy Judge

xc:    Debtor(s)

---

[15] *In re Doan*, 672 F.2d 831, 833 (11th Cir. 1982).

Case 09-83098-CRJ13    Doc 76    Filed 05/16/14    Entered 05/16/14 12:35:20    Desc Main
Document    Page 10 of 11

Jack Sabatini, attorney for debtor(s)
all creditors
Michael Ford, trustee

11